# In the United States Court of Federal Claims

Case No. 10-673C
Filed: January 25, 2012
**TO BE PUBLISHED**

*****************************************

| | | |
|---|---|---|
| TRAVELERS CASUALTY & | * | Waiver of sovereign immunity; standing; |
| SURETY COMPANY OF | * | privity of contract; assignment; Anti- |
| AMERICA, | * | Assignment Act; equitable subrogation; |
| *Plaintiff,* | * | general liability insurer; breach of implied |
| | * | contract; mutual obligations between |
| v. | * | insurer and government. |
| | * | |
| THE UNITED STATES OF | * | |
| AMERICA, | * | |
| *Defendant.* | * | |
| | * | |

*****************************************

*Helen Heim Albee*, Henrichsen, Siegel P.L.L.C., Jacksonville, FL, attorney of record for Plaintiff.

*Katy Marie Bartelma*, with whom were **Mark A. Melnick, Jeanne E. Davidson and Tony West,** Department of Justice, Washington, D.C., for Defendant.

*Amelia C. Moorstein*, law clerk.

## <u>OPINION</u>

**BASKIR, Judge**.

This case comes before the Court on Defendant's Motion to Dismiss.  We find that Plaintiff lacks standing to bring suit in this Court and **GRANT Defendant's Motion to Dismiss.**

## I.  BACKGROUND

The facts are taken from the parties' filings.  Plaintiff, Travelers Casualty and Surety Company of America (Travelers), filed a Complaint asking for damages resulting from an alleged breach of an implied contract.  Plaintiff issued a crime liability insurance policy to S & K Sales Company (S & K).  Plaintiff has filed this claim as assignee and subrogee to S & K after it paid out a claim pursuant to the insurance policy.

S & K is a "vendor/manufacturer representative" for various vendors and manufacturers from whom Army and Air Force Exchange Service (AAFES) has purchased goods to be resold in their retail stores.  S & K would facilitate "vendor-sponsored promotions" at AAFES locations.  To facilitate promotions for the vendors' products, S & K would reimburse AAFES for the difference between the wholesale price of the product and the discounted price of the product, so that AAFES would remain whole when a vendor placed products on sale.  S & K asserts that this course of business has been in place throughout S & K's almost 70-year history of working in military retail facilities operated by AAFES.

S & K representatives would present a check to a vendor on which was printed:

CUSTOMER CERTIFICATION

I (we) understand that this is not a promotional offer and that the monies paid are not simply a price reduction and that I (we) agree to perform on the Merchandising Options as presented by S & K Sales Co. and agree to submit the required proof of performance. Should, for any reason, the merchandising performance not be accomplished during the scheduled promotion period, I (we) will reimburse S & K Sales Co. upon receipt of an invoice, for the unearned allowances previously paid.

S & K would also submit a Promotional Reimbursement form to the vendor authorizing the promotion.  The vendor would reimburse S & K for any payment made to AAFES for the merchandise.  AAFES had specific procedures set forth in its Exchange Operating Procedures manual with regard to administering the vendor-sponsored promotions.

In 2003, S & K employed Celeste Reinhardt as a vendor representative for AAFES stores in Hawaii.  Starting in 2005, instead of presenting AAFES with checks to facilitate promotions, she would present S & K checks "paid to the order of AAFES" at AAFES stores and receive cash (and on one occasion, merchandise) in exchange. S & K did not discover the embezzlement until July 2007, after Ms. Reinhardt had cashed checks totaling $250,944.

S & K sent a claim for reimbursement to AAFES in April 2009, but AAFES refused to pay based upon the absence of a contractual relationship.  S & K then filed a claim with Travelers under its Crime Plus insurance policy.  Travelers paid $230,944 under the policy and S & K executed a Release and Assignment that purports to assign Travelers all of S & K's rights against any person or organization responsible for the loss.

II.     **DISCUSSION**

A.     Standard of Review

In ruling on a motion to dismiss for lack of subject matter jurisdiction pursuant to the U.S. Court of Federal Claims Rule 12(b)(1), the Court accepts as true the undisputed allegations in the complaint and draws all inferences in favor of the plaintiff. *Cardiosom, LLC v. United States*, 91 Fed. Cl. 659, 662 (2010).  If the motion to dismiss challenges the truth of jurisdictional facts alleged in the complaint, the Court may consider relevant evidence to resolve the dispute.  *Reynolds v. Army & Air Force Exch. Servs.,* 846 F.2d 746, 747 (Fed. Cir. 1998).  The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *Id.* at 748.  "Subject matter jurisdiction is a threshold matter which must be addressed before the Court reaches the merits of plaintiff's claims."  *Cardiosom,* 91 Fed. Cl. at 662 (citations omitted).

Absent an unequivocal consent to suit, the U.S. Court of Federal Claims lacks authority to grant relief against the United States.  *United States v. Testan,* 424 U.S. 392, 399 (1976); *see Chancellor Manor v. United States*, 331 F.3d 891, 898 (Fed. Cir. 2003) ("Waivers of sovereign immunity are construed narrowly.") The central provision granting consent to suit in the Court of Federal Claims is the Tucker Act, 28 U.S.C. § 1491.  Under the Tucker Act, this Court possesses jurisdiction to entertain monetary claims founded upon the Takings Clause of the Constitution, statutes, regulations, or contracts.  28 U.S.C. § 1491(a)(1).

For a claim founded upon contract to fall within the Tucker Act's waiver of sovereign immunity and therefore within the jurisdiction of this Court, a plaintiff must adequately plead the elements necessary to establish the existence of a contract (*Trauma Service Group v. United States,* 104 F.3d 1321, 1325 (Fed. Cir. 1997)); that the contract was entered into by an authorized Government official (*City of El Centro v. United States*, 922 F.2d 816 (Fed. Cir. 1990)); and that there exists privity of contract (*Erickson Air Crane Co. v. United States,* 731 F.2d 810, 813 (Fed. Cir. 1984)).

B.     Standing

The threshold issue in this case is whether the Government has waived sovereign immunity so as to allow Travelers to bring a breach of contract claim.  Plaintiff does not have standing to sue for breach of contract because it is not in privity with the Government and cannot sue as an assignee or subrogee.  Because Travelers lacks standing, we do not reach the further questions as to whether a contract was formed between S & K and the Government and whether the Government breached any alleged contract.

The Government only consents to be sued by those with whom it is in privity of contract. *Erickson Air Crane,* 731 F.2d at 813.  Plaintiff is not a signatory to a contract document with the Government, so it may not bring a direct suit for breach of contract. *See Anderson v. United States*, 344 F.3d 1343, 1352 (Fed. Cir. 2003).

Plaintiff relies on its status as an assignee of S & K's rights to sue any person or organization responsible for S & K's loss.  Complaint ¶ 1.  However, this assignment does not meet the requirements of the Anti-Assignment Act, which provide that "a transfer or assignment of any part of a claim against the United States Government . . .may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued."  31 U.S.C. §3727(a), (b).  Plaintiff cannot rely on its status as an assignee.

Despite the plain language of the Anti-Assignment Act, Plaintiff argues that this statute does not apply because the assignment in question does not implicate the purposes of the Act.  *See Centers v. United States,* 71 Fed. Cl. 529, 534 (2006).  In *Centers*, we acknowledged that the Court has recognized several purposes of the Act, including "enabl[ing] the United States to deal exclusively with the original claimant instead of with several parties," "minimizing subjection to successive litigation upon the same claim," "eliminating the risk of double payment or multiple liability," and "preserv[ing] the Government's defenses against the assignor by way of set-off or counterclaims that the Government would not have against the assignee."  *Id.* (citation omitted).

We disagree with Plaintiff.  The purposes of the Act are implicated in this case. Travelers is not an original claimant and the Government cannot set off any claims or counterclaim against Travelers as it otherwise would be able to in a suit against S & K. S & K received $230,244 under the crime liability policy -- $20,000 less (the amount of the deductible) than the $250,244 claimed as a loss.  This differential raises the risk of successive litigation and multiple liability.

Plaintiff argues that it has standing by virtue of equitable subrogation.  This Court has recognized two instances where a Plaintiff may be subrogated to an original claimant's claim: "when the surety takes over contract performance or when it finances completion of the defaulted contract."  *Insurance Co. of the West v. United States,* 243 F.3d 1367 (Fed. Cir. 2001).  Neither of these exceptions applies here.

There is no case law that would lead this Court to conclude sovereign immunity may be waived to allow a general liability insurer to bring suit against the Government under the Tucker Act.  Plaintiff points to *Insurance Co. of the West* as supporting a waiver of sovereign immunity in this case because the Court stated, "[n]either the Federal Tort Claims Act nor the Tucker Act is limited to claims asserted by the original claimant. . .The language of both acts contains an unequivocal expression waiving sovereign immunity as to claims, not particular claimants."  *Id.* at 173-4.

The main holding in this case re-affirms the well-established principle that a surety may step into the shoes of a government contractor and sue the Government as the contractor's subrogee under the Tucker Act.  In *Centers*, we concluded that the language set forth in *Insurance Co. of the West* is merely dicta. *Centers,* 71 Fed. Cl. at 533.  Other Courts have similarly concluded that this language is dicta and that *Insurance Co. of the West* stands for the well-established proposition that equitable subrogation permits a surety to sue the Government.  *See Nelson Constr. Co. v. United States*, 79 Fed. Cl. 81 (2007).

Furthermore, the rationale behind equitable subrogation does not apply to allow general liability insurers to sue the Government.  In the surety context, there are mutual obligations running between the Government and the surety -- the surety actually steps into the shoes of the contractor to assume responsibility for completion of the contract entered into between the Government and prime contractor.  In the general liability context, the insurer acquires the contractor's right to sue for breach of contract but does not assume any of the prime contractor's obligations to the Government.  The Government does not agree to the arrangement between the prime contractor and the general insurer, nor does it receive any benefit as a result of the arrangement.  In analyzing *Balboa Ins. Co. v. United States*, 775 F.2d 1158 (Fed. Cir. 1985),  the Court in *Federal Ins. Co. v. United States,* 29 Fed. Cl. 302, 306 (1993) stated,

> The *Balboa* court's interpretation that the Tucker Act authorizes suit by a person who is "as much a party to the Government contract as the contractor" would hardly demand the conclusion that Congress also intended to authorize suit by parties who have no direct responsibility for contract performance and no other obligation owed directly to the government. [The general liability insurer's] relationship to the government seems far better analogized to that of a subcontractor, which the *Balboa* court reasoned, "has no obligation[ ] running directly to or from the Government ... and therefore possesses no enforceable rights against the United States.

We agree with the Court's rationale in *Federal Ins. Co.*  Plaintiff did not fully step into S & K's shoes; instead, Plaintiff merely was assigned S & K's right to sue.  Plaintiff does not have standing to sue for breach of contract in this Court.

III.    **CONCLUSION**

For the reasons stated above, we hereby **GRANT Defendant's Motion to Dismiss**.  The Clerk is directed to **enter judgment for the Defendant and DISMISS the Complaint.**  Parties are to bear their own costs.

**IT IS SO ORDERED.**

 s/ Lawrence M. Baskir
LAWRENCE M. BASKIR
Judge